# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK
# CENTRAL ISLIP DIVISION

Jonathan Claybrook,
*individually and on*
*behalf of the putative classes*,

      Plaintiff,

v.

Carco Group Inc. d/b/a Cisive,              Case No.
and
SPI Researchers, LLP,

      Defendants.

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Jonathan Claybrook, on behalf of himself and all others similarly situated, by and through his undersigned Counsel, and alleges the following against Defendants, CARCO GROUP INC. d/b/a CISIVE (hereinafter "CISIVE") and SPI Researchers LLP, ("SPI"). Defendants are consumer reporting agencies ("CRAs") providing consumer report information used by prospective employers to make employment decisions. Defendants' willful failures to follow the FCRA's simple requirements for issuing consumer reports used for employment purposes scuttled Plaintiff's opportunities for employment. Plaintiff seeks justice for himself, and the classes of consumers impacted by Defendants' unlawful conduct.

## PRELIMINARY STATEMENT

1.      This is an action for actual, statutory, and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, and the common law tort of defamation.

2.      The FCRA requires that companies like CISIVE and SPI—which sell employment and/or background check reports that have a serious and decisive impact on the ability of consumers to obtain employment and/or housing opportunities—follow reasonable procedures to ensure the maximum possible accuracy of the information they report. Congress described these obligations placed on consumer reporting agencies as "grave responsibilities." 15 U.S.C. § 1681.

3.      Defendants failed to treat these obligations accordingly, and despite knowing that their process for obtaining consumer report information was inadequate, they continued to sell reports that inflicted harm upon consumers, including Plaintiff.

4.      This case arises because Defendants routinely violated the accuracy requirement of the FCRA by reporting inaccurate, incomplete or misleading information about consumers, including Plaintiff.

5.      Such misreporting, which results from the failure to use reasonable procedures designed to ensure the information the Defendant reports is as accurate as possible, results in a violation of the FCRA's accuracy requirement.

6.     Defendants' practices harm consumers seeking employment by prejudicing potential employers with inaccurate, incomplete and misleading adverse information.

7.     Plaintiff brings class action claim under FCRA § 1681e(b) against Defendants because they falsely reported him, and countless other consumers, as being convicted for crimes for which they were never convicted.

8.     The Consumer Financial Protection Bureau has noted, "experience indicates that [CRAs] lack incentives and under-invest in accuracy" Consumer Fin. Prot. Bureau, Supervisory Highlights Consumer Reporting Special Edition 21 (Issue 14, March 2, 2017).  This is particularly true as to how Defendants have complied with its now 50-year-old obligation to conduct a meaningful and accurate investigation.

9.     The FCRA also requires that a consumer reporting agency reporting negative public record information likely to have an adverse effect on a consumer's ability to obtain employment must provide the consumer with contemporaneous notice of that it is reporting such information and to whom it is reporting it or maintain strict procedures to ensure the information is up to date and complete. 15 U.S.C. § 1681k.

10.     Discovery will prove Defendants violated 15 U.S.C. § 1681k(a)(1) and (2) by failing to maintain strict procedures to ensure the information reported was

*complete and up to date* and failing to notify *consumers at the time* it was reporting negative public record information likely to have an adverse effect on their ability to obtain employment or housing. *Id.*

11. The FCRA also requires consumer reporting agencies, upon request, disclose to consumers all of the information the agency possesses about them, including the sources of the information used in their consumer report. 15 U.S.C. § 1681g.

12. Discovery will prove CISIVE violated 15 U.S.C. § 1681g(a)(2) by failing to disclose to Plaintiff the sources of information used in the preparation of his consumer report.

13. The FCRA's interlocking accuracy, completeness, up-to-date-ness, notice and disclosure requirements are intended to protect consumer privacy by restricting the use of consumer reports to permissible purposes and implement safeguards to ensure the information being reported is accurate and consumers are made aware of what is being reported about them.

**JURISDICTION AND VENUE**

14. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

15. Venue is proper in this District and Division because CISIVE is headquartered in this District and Division.

**PARTIES**

16.     Plaintiff is a natural person and a resident of the State of Missouri.  He is a "consumer" as defined by 15 U.S.C. § 1681a(c).

17.     CISIVE is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) or a "reseller" as defined in 15 U.S.C. § 1681a(u), and it sells consumer reports used for employment purposes to employers. It is headquartered in New York and issued Plaintiff's consumer report to his prospective employer.

18.     SPI Researchers, LLP, a Texas entity, is a CRA that sells consumer report information used for employment purposes to other CRAs or resellers, including to Defendant Cisive.

**FACTUAL ALLEGATIONS**

*Section 1681e(b) of The Fair Credit*
*Reporting Act Requires Substantive Investigations*

19.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *id.* at 36570 (statement of Rep. Sullivan); . . . . In enacting FCRA, Congress adopted a variety of measures designed to insure that agencies report accurate information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001). "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit

reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

20.    "Section 1681e(b) sets forth the CRAs' overall du[t]y:

> (b) **Accuracy of report**. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

21.    As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, "investigation," is defined as "[a] detailed inquiry or systematic examination." Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining "investigation" as "a searching inquiry").

357 F.3d 426, 430 (4th Cir. 2004).

22.    Further, as the Defendants are aware, courts have held that even though the term "investigation" is not used in § 1681e(b), it is clear that CRAs have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§ 1681e(b) and § 1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds

of what may be done, occur or be conceived . . . ." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance. *Burke*, 2011 WL 1085874, at *4.

23.    It has long been the law – since 1970 in fact – that:

[W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Fed. Tr. Comm'n, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT (July 2011), at 67.[1]

### *Defendants Failed to Accurately Report Consumer Information*

24.    Plaintiff was offered employment by Wells Fargo as a Senior Residential Valuation Specialist.

25.    As a condition of employment, Plaintiff was required to undergo a background check.

26.    On January 6, 2023, Wells Fargo ordered Plaintiff's consumer report from CISIVE.

---

[1] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

27.    Subsequently, to compile Plaintiff's consumer report, CISIVE procured Plaintiff's consumer report from SPI.

28.    On or around January 12, 2023, because of the information contained in the consumer report, Wells Fargo rescinded Plaintiff's job offer.  Specifically, Wells Fargo rejected him because the report CISIVE produced, containing the information it had obtained from SPI, included a "guilty" 2011 disposition for a marijuana-related felony in Missouri.

```
--------------------------------------------------------------------------
    Date Of Charge: 08/19/2011
            Charge:
              Plea: PLEAD GUILTY
       Disposition: GUILTY
       Convicted Of: DISTRIBUTE/DELIVER/MANUFACTURE/PRODUCE OR ATTEMPT TO
                     OR POSSESS WITH INTENT TO
                     DISTRIBUTE/DELIVER/MANUFACTURE/PRODUCE
   Type Of Offense: FELONY
     Sentence Date: 10/10/2012
          Sentence: 120 DAYS CONFINEMENT, 5 YEARS PROBATION WITH
```

29.    The criminal history information SPI sold to CISIVE, which CISIVE then reported Wells Fargo, was inaccurate, incomplete, misleading and never should have been reported.

30.    Plaintiff never pled guilty or was convicted of Felony "Distribute/Deliver/Manufacture/Produce or Attempt to or Possess with Intent to Distribute/Deliver/Manufacture/Produce" as Defendants reported.  Thus, the information Defendants reported was inaccurate.

31.   If Defendants had conducted a reasonable investigation and reviewed the appropriate court documents, they would have found Plaintiff was ultimately charged only with "Attempt to Produce a Controlled Substance."



9.  I understand that I am charged with the following crime(s).

Count I: attempt to produce a controlled substance class B felony

Count II: possession of drug paraphernalia w/ intent to use. class A misd.

32.   Plaintiff entered a plea of guilty to "*Attempt* to Produce a Controlled Substance."  The report was misleading and implied he had entered a plea to the crime of "Distribute /Deliver /Manufacture / Produce . . . A Controlled Substance."

33.   SPI did not conduct a reasonable investigation into Plaintiff's criminal history.  Instead of reviewing the actual file, SPI relied upon an electronic copy of the court's docket, which only showed the *original* charge against Plaintiff.

| Original Charge: | 1 | 14-Jun-2011 3246500 | Dist/Del/Manf/Produce Or Attempt To Or Possess W/Intent To Dist/Del/Manf/Produce A Controlled Substance (Felony B RSMo: 195.211) |
|---|---|---|---|
| Disposition: | 11-Jul-2012 | Guilty Plea | |
| Order Date: | 10-Oct-2012 | Sentence or SIS : | Suspended Imposition of Sent. |
| Length : | 5 Years | Start Date : | 10-Oct-2012 |

34.   SPI did not obtain or review the actual court documents reflecting the charge to which Plaintiff entered a plea. Relying on electronic dockets is not a reasonable investigation into a consumer's criminal history. A reasonable investigation would have entailed reviewing the underlying court documents.

35.     Furthermore, the electronic docket clearly revealed Plaintiff received a Suspended Imposition of Sentence (SIS).  Under Missouri law, an SIS is neither a conviction nor a disposition of "guilty."

36.     In fact, since 1979, Missouri has had a law providing courts the option of suspending the imposition of a sentence. MO. STAT. 557.011.[2]

37.     While Defendants may argue that it was technically accurate that Plaintiff entered a plea of guilty to "*Attempt* to Produce a Controlled Substance," it was inaccurate to report that he had pled guilty or been convicted of "Distribute /Deliver /Manufacture / Produce . . . A Controlled Substance."

38.     Furthermore, it was inaccurate and misleading to report a disposition of guilty as Plaintiff was never found guilty or sentenced for the felony. To the contrary, Plaintiff was not sentenced by the court and there is no conviction on the publicly available docket.

39.     It is equally misleading to omit from the report that sentencing was suspended.

40.     Setting aside that the criminal history should not have been reported at all because of the SIS designation, the consumer report was neither complete nor up

---

[2] Pursuant to 15 U.S.C. § 1681t(b)(1)(E), because Mo. Stat. 557.011 was effective prior to September 30, 1996, it pre-empts any federal definitions of "conviction" for purposes of determining whether certain information may be included in a consumer report. *See, e.g.*, *Aldaco v. RentGrow, Inc*., 921 F.3d 685, 688 (7th Cir. 2019).

to date because it did not include the SIS designation.  The SIS designation provides context to the (inaccurate, incomplete and misleading) information reported about Plaintiff.

41.    Furthermore, a Missouri Constitutional Amendment effective on December 8, 2023, effectively expunged Plaintiff's marijuana-related criminal history.  The sentences for certain marijuana offenses, including the felony for which Plaintiff received the SIS disposition, were vacated. MO. CONST. art. XIV, § 2.

42.    A vacated sentence is not a conviction under federal law. Under federal sentencing guidelines, a vacated sentence is void and not counted in criminal history.

43.    Defendants' publication of reports and public record information that was ultimately transmitted to Wells Fargo would not have occurred but for the Defendants' failure to follow reasonable procedures to assure the maximum possible accuracy of the information in Plaintiff's consumer report as required by 15 U.S.C. § 1681e(b).

44.    Relying on electronic records is not a reasonable procedure to ensure the maximum accuracy of a consumer report containing criminal history.

45.    Moreover, a report that excludes pertinent information providing context to the report is not compiled with maximum possible accuracy. SPI's failure to include pertinent information pertaining to Plaintiff's SIS disposition when it provided Plaintiff's consumer report information to CISIVE demonstrates SPI's

failure to follow reasonable procedures to ensure maximum accuracy of the information it reports.

46.    At minimum, SPI should have known the SIS designation should have been included in the information it reported about Plaintiff since it regularly researches, compiles and obtains court records in Missouri.

47.    Because SPI did not include SIS designations in its consumer reports, it did not maintain strict procedures to ensure the information it reported was complete and up to date.

48.    SPI has been researching, compiling and obtaining court records in Missouri for many years, and should have known that it was prohibited from reporting criminal history in cases where the Court suspended an imposition of sentence.

49.    SPI has been researching, compiling and obtaining court records in Missouri for many years, and should have known that certain marijuana sentences had been vacated effective December 8, 2023, by constitutional amendment.

50.    SPI should never have reported Plaintiff's marijuana offenses vacated effective December 8, 2023, by constitutional amendment.

51.    Discovery will prove CISIVE does not conduct its own courthouse research. Instead, CISIVE relies on third parties such as SPI to compile and summarize the information CISIVE then transmits through its consumer reports.

52.    Discovery will confirm that CISIVE takes no steps to confirm the information SPI provides, instead relying completely on what SPI gives it.

53.    Since CISIVE never obtains or reviews the complete court files of the consumers upon whom it reports criminal history information, it cannot assert it has strict procedures in place to assure it is reporting information that is "complete and up to date." 15 U.S.C. § 1681k(a)(2).

54.    CISIVE has been providing Missouri criminal history information to its customers for many years, and should know that in Missouri, an SIS designation is not a conviction or finding of guilt.

55.    CISIVE has been providing Missouri criminal history information to its customers for many years, and should know that in Missouri, since 1979, it is prohibited from reporting SIS designations as convictions or findings of guilt.

56.    Defendants should have both known that the FCRA prohibits reporting Missouri SIS designations as convictions or findings of guilt.

57.    Discovery will prove CISIVE does not require the third parties from whom it procures consumer report information to review and provide CISIVE with the court documents underlying the criminal history CISIVE is reporting. Thus, CISIVE does not take reasonable measures to ensure the maximum accuracy of the consumer report information it ultimately provides to prospective employers because it does not independently review the information before it is reported.

58.    Discovery will show CISIVE does not require third parties such as SPI to exclude or identify SIS dispositions in the consumer report information third parties compile for CISIVE.  Thus, CISIVE does not take reasonable measures to assure the maximum accuracy of the consumer report information it ultimately provides to prospective employers.

59.    CISIVE has been selling Missouri criminal history information to employers for many years and should have known that certain marijuana sentences had been vacated effective December 8, 2023, by constitutional amendment.

60.    Plaintiff did not receive at-the-time notice from CISIVE that it was reporting negative information about him to Wells Fargo.  CISIVE knew or should have known such information was likely to adversely affect his opportunity for employment.  Therefore, CISIVE unlawfully reported information about Plaintiff without providing him the requisite at-the-time notice. 15 U.S.C. § 1681k(a)(1).

61.    CRAs such as Defendants deal in volume and use standardized procedures to gather information and attribute it to individuals. They therefore use processes designed to be cost-effective rather than accurate, because ensuring accuracy often costs Defendants additional money.

62.    Defendants failed to follow reasonable procedures to ensure the maximum possible accuracy regarding the information they sold about Plaintiff.

63.    Defendants' reporting of the inaccurate, incomplete and misleading information concerning Plaintiff was neither accidental nor a result of simple negligence, but instead a result of flawed policies and procedures.

### *The Adverse Employment Action*

64.    On January 18, 2023, Wells Fargo provided Plaintiff with notice it was reviewing his criminal history information and might take an adverse employment action against him. Wells Fargo advised Plaintiff he could challenge the accuracy or completeness of the report and identified the consumer reporting agency from whom it was obtaining the information as CISIVE.

65.    On February 3, 2023, after Wells Fargo informed Plaintiff it was rescinding his job offer based upon the consumer report it had received from CISIVE, Plaintiff initiated a dispute with CISIVE concerning the contents of his consumer report, including the reporting of the 2012 marijuana-related felony, and demanded a copy of the report.

66.    After Plaintiff initiated the dispute, CISIVE revised Plaintiff's consumer report, removing the 2012 marijuana-related felony information that never should have been reported in the first place.  The revised report only referenced the misdemeanor for unlawful use of drug paraphernalia.

```
SAINT CHARLES, MO
-----------------
Search Type:        Felony and Misdemeanor, 7 Years

COURT:              CIRCUIT
CASE NUMBER:        1111-CR03177-01    MISDEMEANOR
DATE OF OFFENSE:    06/14/11
FILING DATE:        08/19/11
CHARGE(S):          ***THE ORIGINAL REPORT WAS COMPLETED AND SENT TO YOU ON
                    01/11/2023. THIS IS A REVISED AND CORRECTED REPORT.***

                    UNLAWFUL USE OF DRUG PARAPHERNALIA (MISDEMEANOR)
DISPOSITION DATE:   10/10/12
DISPOSITION:        PLED GUILTY
                    SENTENCED TO INCARCERATION (JAIL) 120 DAYS SHOCK
                    COSTS $293.50 - SATISFIED 02/15/2013
```

67.    The subsequent revision of the report confirms the 2012 marijuana-related felony information never should have been included in the report and was inaccurate, incomplete and misleading at the time it was reported.  In fact, the report is described as "*a revised and corrected report*."

68.    Ironically, the "revised and corrected report" was also inaccurate as Plaintiff's misdemeanor conviction should not have been reported.

69.    However, it was "too little, too late."  Wells Fargo had already rescinded Plaintiff's job offer, *i.e.* taken adverse employment action against him.

70.    If Defendants had not reported inaccurate, incomplete or misleading information about Plaintiff to Wells Fargo, Wells Fargo would not have rejected him for employment.

71.    If Defendants had taken reasonable measures to ensure the maximum possible accuracy of the information being reported about Plaintiff to Wells Fargo, Wells Fargo would not have taken an adverse employment action against him.

72. If Defendants had taken reasonable measures to ensure the information being reported about Plaintiff to Wells Fargo was complete and up to date, Wells Fargo would not have taken an adverse employment action against him.

73. If Defendants had provided Plaintiff with at-the-time notice it was reporting negative information about Plaintiff to Wells Fargo that was likely to have an adverse effect on his prospects for employment, Plaintiff would have initiated the dispute process sooner and secured his employment with Wells Fargo.

### *Full File Disclosure*

74. In July and December of 2023, Plaintiff requested from CISIVE a full disclosure of the consumer report information CISIVE had about him in his consumer report file.  Specifically, in July, 2023, Plaintiff his mailed requests by certified mail to CISIVE's 1030 Lillington Highway, Spring Lake, North Carolina address previously provided to him.  In December 2023, Plaintiff submitted his request by email pursuant to the instructions on CISIVE's website.

75. CISIVE never responded to Plaintiff's full file disclosure requests.

### *Plaintiff Suffered Actual Harm from the Inaccurate Reporting*

76. As a result of Defendant's reporting of the inaccurate information about Plaintiff, he has suffered damages, including, but not limited to:

   a. Loss of income and wages;

   b. Humiliation;

c.  Stress associated with the loss of employment;

d.  Loss of time attempting to cure the error;

e.  Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life from being denied employment; and

f.  Stress and wasted time associated with attempting to resolve this matter over the course of the last few years.

77.    In the employment context, the FCRA imposes upon CRAs additional requirements designed to protect consumers' rights.  In keeping with the FCRA's fundamental goal of transparency, the FCRA requires that CRAs that provide reports that contain public-record information likely to have an adverse effect on a consumer's ability to obtain employment, must either:

(1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

(2) maintain strict procedures designed to ensure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a)(1), (2).

78.    CISIVE violated 15 U.S.C. § 1681k(a)(1) when it failed to provide Plaintiff with contemporaneous notice when it furnished Plaintiff's negative

consumer report information, which was likely to have an adverse effect his employment or potential employment, to Wells Fargo. The information CISIVE furnished certainly fits the bill of "negative information" likely to have an adverse effect on employment. However, CISIVE never notified Plaintiff that it was reporting negative information about him or reporting such information to anyone at all.

79.    SPI violated Section 1681k(a)(1) because it reported information to CISIVE that was likely to have a negative affect on Plaintiff's ability to obtain employment and it knew CISIVE would sell for employment purposes, and it did not provide Plaintiff with contemporaneous notice that it was providing that information to CISIVE.

80.    CISIVE also violated 15 U.S.C. § 1681k(a)(2) because it did not maintain strict procedures to ensure the public-record information it reports is complete and up to date. If CISIVE had in fact maintained strict procedures, it would not have misreported information for expunged or vacated crimes.

81.    CISIVE violated 15 U.S.C. § 1681k(a)(2) because it did not maintain strict procedures to ensure the public-record information it reports is complete and up to date. If it had in fact maintained strict procedures, it would not have misreported Plaintiff's SIS disposition as "pled guilty" to a crime to which he didn't plea and "convicted."

82.    CISIVE violated 15 U.S.C. § 1681k(a)(2) because it did not maintain strict procedures to ensure the public-record information it reports is complete and up to date. If it had in fact maintained strict procedures, the SIS designation, expungement or fact the guilty plea was vacated, would have also been reported.

83.    SPI violated 15 U.S.C. § 1681k(a)(2) because its process for obtaining consumer report information was flawed. SPI did not review complete court files make sure the records it reported were complete and up to date.  Instead, SPI relied upon charging documents, electronic dockets, or the equivalent to obtain the information it reported.

### *Defendants' Violations Were Willful*

84.    The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes "not only knowing violations of [the statute], but reckless ones as well*." Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007).  A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  at 69.

85.    Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

86.    As detailed above, the FCRA sections at issue here and its informative guidance have been around for over 50 years. The language of § 1681e(b), § 1681k(a)(1), (2) and 1681g and have not changed. Neither the FCRA's caution about Defendant's "grave responsibilities" to ensure accuracy nor its notification requirements have changed.

## CLASS ACTION ALLEGATIONS

87.    Plaintiff asserts a claim against SPI on behalf of a "SPI § 1681e(b) – Failure to Follow Reasonable Procedures" Class defined as:

> **All consumers in Missouri upon whom SPI reported convictions for crimes that had been expunged, vacated or for which the imposition of a sentence was suspended within five years of the filing of this lawsuit through the date of final judgment in this action.**

88.    Plaintiff also asserts a claim against CISIVE on behalf of a "CISIVE § 1681e(b) – Failure to Follow Reasonable Procedures Class" defined as:

> **All consumers in Missouri who were the subject of a consumer report furnished by CISIVE that included convictions for crimes that had been expunged, vacated or for which the imposition of a sentence was suspended, within five years of the filing of this lawsuit through the date of final judgment in this action.**

89.    Plaintiff also asserts a claim against CISIVE on behalf of a "CISIVE § 1681k Class" defined as:

> **All consumers in the United States who were the subject of a consumer report furnished for employment purposes by CISIVE that included criminal history entries of the grade of misdemeanor or higher, within five years of filing this lawsuit through the date of final judgement in this action.**

90.     Plaintiff also asserts a claim against CISIVE on behalf of a "CISIVE §

1681g(a)(1)-(2) Full File Disclosure Class" defined as:

> **All consumers in the United States who requested, and**
> **subsequently received, a consumer report file from CISIVE that**
> **did not contain a clear, accurate or complete disclosure of their**
> **consumer report file, including the sources of information in those**
> **files, within five years of the filing of this lawsuit through the date**
> **of final judgment in this action.**

91.     **Numerosity.**  The members of the putative classes are so numerous that

the joinder of all class members is impracticable.  CISIVE furnished thousands of

consumer reports nationwide.  SPI regularly compiles consumers' personal, private,

and sensitive information into consumer reports for sale to CRAs and employers.

Plaintiff is informed and believes that during the relevant time period, tens of

thousands of employees and prospective employees, if not hundreds of thousands,

satisfy the definition of the putative classes.  Based on the number of putative class

members and their geographic disbursal, joinder is impracticable.  The names and

addresses of the class members are identifiable through Defendants' records and

putative class members may be notified of this action by mailed notice.

92.     **Predominance of Common Questions of Law or Fact.**    Class

treatment is also appropriate because questions of law or fact common to the putative

Classes predominate over any questions affecting only individual members of the

putative Classes, and also because a class action is superior to other available

methods for the fair and efficient adjudication of this litigation.  Defendants' conduct

stems from common and uniform policies and practices, resulting in common violations of the FCRA. Such common questions include, among others:

a.    whether SPI failed to take reasonable measures to ensure maximum possible accuracy of its information it reported to CISIVE and others;

b.    whether CISIVE failed to take reasonable measures to ensure maximum possible accuracy of the information contained in the consumer reports it sold to employers;

c.    whether CISIVE ensured the consumer report information it reported was complete and up to date at the time it was being reported;

d.    whether CISIVE failed to provide consumers contemporary notice when issuing consumer reports that contained public-record information likely to have an adverse effect on consumers' ability to obtain employment;

e.    whether Defendants' violations of the FCRA were willful;

f.    the proper measure of statutory damages; and

g.    the proper form of relief.

93.    Members of the putative classes do not have an interest in pursuing separate actions against Defendants, as the amount of each class member's

individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

94. This case is further maintainable as a class action because prosecution of actions by or against individual members of the putative classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

95. This case is also maintainable as a class action because Defendants acted or refused to act on grounds that apply generally to the putative classes.

96. Class certification is also appropriate because questions of law and fact common to the putative class predominate over any questions affecting only individual members of the putative class, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

Defendants' conduct stems from common and uniform policies and practices, resulting in common violations of the FCRA. Moreover, management of this action as a class action will not present any foreseeable difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all putative class members' claims in a single action, brought in a single forum.

97.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the putative Classes and has retained Counsel experienced in complex class action litigation, including nationwide class actions pressing claims under the FCRA.

## CLASS ACTION CLAIMS FOR RELIEF

### COUNT I

**FCRA VIOLATION**
**Failure to Follow Reasonable Procedures to Assure Maximum Accuracy**
**(Individually and on behalf of the "SPI § 1681e(b) – Failure to Follow Reasonable Procedures Class")**

98.     Plaintiff restates the allegations set forth in Paragraphs 19 through 84 as if fully set forth herein.

99.     SPI willfully violated 15 U.S.C. § 1681e(b) because it provided consumer report information about Plaintiff, which was used for employment purposes, without following reasonable procedures to assure maximum possible accuracy of the information about Plaintiff.

100.  SPI invaded Plaintiff's privacy by compiling Plaintiff's personal, private, and sensitive consumer report information without assuring maximum possible accuracy.

101.  SPI misappropriated Plaintiff's likeness by compiling Plaintiff's personal, private, and sensitive consumer report information, for profit, without assuring maximum possible accuracy of the information.

102.  SPI caused Plaintiff injury because the information SPI trafficked, which never should have been reported, was used, in whole or in part, as the basis for an adverse employment action.

103.  The forgoing violations were willful.  SPI's willful conduct is also reflected by, among other things, the following facts:

    a.    SPI knew of potential FCRA liability;

    b.    SPI is a consumer reporting agency with access to legal advice through their own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

    c.    The FCRA's maximum possible accuracy requirement is clearly spelled out in the plain language of the statute;

d.    SPI knew or had reason to know that their conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute;

e.    SPI voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

f.    Plaintiff and the putative class are entitled to statutory damages of not less than one hundred dollars ($100) and not more than one thousand dollars ($1,000) for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2); and

g.    Plaintiff and the class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

104.   Plaintiff and the SPI 1681e(b) Class are entitled to statutory damages of between $100 and $1,000 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

105.   Plaintiff and the SPI 1681e(b) Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3). Plaintiff and the SPI 1681e(b) Class are entitled to statutory damages of between $100 and $1,000

for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

## COUNT II

**FCRA VIOLATION**
**Failure to Follow Reasonable Procedures to Assure Maximum Accuracy**
**(Individually and on behalf of the "CISIVE § 1681e(b) – Failure to Follow Reasonable Procedures Class")**

106.    Plaintiff restates the allegations set forth in Paragraphs 19 through 84 as if fully set forth herein.

107.    CISIVE willfully violated 15 U.S.C. § 1681e(b) because it compiled and sold consumer report information about Plaintiff, which was used for employment purposes, without following reasonable procedures to assure maximum possible accuracy of the information about Plaintiff.

108.    CISIVE invaded Plaintiff's privacy by compiling Plaintiff's personal, private, and sensitive consumer report information without assuring maximum possible accuracy of the information it reported.

109.    CISIVE misappropriated Plaintiff's likeness by compiling Plaintiff's personal, private, and sensitive consumer report information, for profit, without assuring its maximum possible accuracy, and publishing such information to a third party.

110. CISIVE caused Plaintiff injury because the information CISIVE trafficked was used, in whole or in part, as the basis for an adverse employment action.

111. The forgoing violations were willful. CISIVE's willful conduct is also reflected by, among other things, the following facts:

    a. CISIVE knew of potential FCRA liability;

    b. CISIVE is a consumer reporting agency with access to legal advice through their own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

    c. The FCRA's maximum possible accuracy requirement is clearly spelled out in the plain language of the statute;

    d. CISIVE knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute;

    e. CISIVE voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

112. Plaintiff and the CISIVE 1681e(b) Class are entitled to statutory damages of between $100 and $1,000 for each and every one of these violations

under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

113.   Plaintiff and the CISIVE 1681e(b) Notice Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

## COUNT III

### FCRA VIOLATION
**Failure to Provide Contemporaneous Notice When Reporting Public-Record Information Likely To Have an Adverse Impact on Consumers' Ability to Maintain Employment (Individually and on behalf of the "CISIVE § 1681k Notice Class")**

114.   CISIVE willfully violated 15 U.S.C. § 1681k(a)(1) because it provided consumer reports about Plaintiff and Class Members, which were used for employment purposes and contained public-record information likely to have an adverse effect on consumers' ability to obtain employment, without providing the subjects of the report contemporaneous notice that it was furnishing the report to the users.

115.   CISIVE cannot rely on the "strict procedures" requirement of Section 1681k(a)(2) because it takes no steps to ensure the public-record information it reports is complete and up to date before it reports the information to end-users.

116.   Plaintiff and class members suffered informational injury by CISIVE's failure to provide them with statutorily required information when such information was due.

117.   CISIVE further caused Plaintiff and class members injury because it deprived Plaintiff and class members of the knowledge that it was reporting information about them that may affect their job prospects, eliminating those individuals' ability to correct inaccuracies or preemptively discuss any negative information with potential employers.

118.   The forgoing violations were willful.  At the time CISIVE violated 15 U.S.C. § 1681k(a)(1), CISIVE knew it was required to provide contemporaneous notice of its furnishing of reports because it has no process in place to meet the strict procedures requirement of Section 1681k(a)(2) when it furnishes reports for employment purposes that contain negative public-record information.  CISIVE's willful conduct is also reflected by, among other things, the following facts:

    a.    CISIVE knew of potential FCRA liability;

    b.    CISIVE is a company with access to legal advice through its own general counsel's office and outside employment counsel, and there will be no contemporaneous evidence that it determined that its conduct was lawful;

    c.    The FCRA's at-the-time notice requirement is clearly spelled out in the plain language of the statute;

d.      CISIVE knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

e.      CISIVE voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

119.  Plaintiff and the CISIVE 1681k Notice Class are entitled to statutory damages of between $100 and $1,000 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

120.  Plaintiff and the CISIVE 1681k Notice Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

## <u>COUNT IV</u>

**FCRA VIOLATION**
**Failure to Provide Contemporaneous Notice When Reporting**
**Public-Record Information Likely To Have an Adverse Impact**
**on Consumers' Ability to Maintain Employment**
**(Individually and on behalf of the "SPI § 1681k Notice Class")**

121.  SPI willfully violated 15 U.S.C. § 1681k(a)(1) because it provided consumer reports about Plaintiff and Class Members, which were used for employment purposes and contained public-record information likely to have an adverse effect on consumers' ability to obtain employment, without providing the

subjects of the report contemporaneous notice that it was furnishing the report to the users.

122.  SPI cannot rely on the "strict procedures" requirement of Section 1681k(a)(2) because it takes no steps to ensure the public-record information it reports is complete and up to date before it reports the information to end-users.

123.  Plaintiff and class members suffered informational injury by SPI's failure to provide them with statutorily required information when such information was due.

124.  SPI further caused Plaintiff and class members injury because it deprived Plaintiff and class members of the knowledge that it was reporting information about them that may affect their job prospects, eliminating those individuals' ability to correct inaccuracies or preemptively discuss any negative information with potential employers.

125.  The forgoing violations were willful.  At the time SPI violated 15 U.S.C. § 1681k(a)(1), SPI knew it was required to provide contemporaneous notice of its furnishing of reports because it has no process in place to meet the strict procedures requirement of Section 1681k(a)(2) when it furnishes reports for employment purposes that contain negative public-record information.  SPI's willful conduct is also reflected by, among other things, the following facts:

    a.    SPI knew of potential FCRA liability;

b. SPI is a company with access to legal advice through its own general counsel's office and outside employment counsel, and there will be no contemporaneous evidence that it determined that its conduct was lawful;

c. The FCRA's at-the-time notice requirement is clearly spelled out in the plain language of the statute;

d. SPI knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

e. SPI voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

126.    Plaintiff and the SPI §1681k Notice Class are entitled to statutory damages of between $100 and $1,000 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

127.    Plaintiff and the SPI §1681k Notice Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

## COUNT V

**FCRA VIOLATION**
**Failing to Provide Consumers with a Full File Disclosure.**
**(Plaintiff individually and on behalf of a CISIVE § 1681g(a)(1)-(2) "Full File Disclosure Class")**

128.  Plaintiff restates the allegations set forth in Paragraphs 19-84 as if fully set forth herein.

129.  CISIVE willfully violated 15 U.S.C. § 1681g(a)(1)-(2) because it failed to clearly, accurately and fully disclose to consumers all of the information in their consumer reports.

130.  CISIVE willfully violated 15 U.S.C. § 1681g(a)(1)-(2) because it failed to clearly, accurately and fully disclose to consumers the sources of information contained in their consumer reports.

131.  Plaintiff and class members suffered informational injury by CISIVE's failure to provide them with statutorily required information when such information was due.

132.  CISIVE further caused Plaintiff and Class Members injury because it deprived Plaintiff and Class Members of the knowledge that it was reporting information about them that may affect their job prospects, eliminating those individuals' ability to correct inaccuracies or communicate directly with the sources of their consumer report information.

133.  CISIVE unjustly used the information about Plaintiff, and sources from

which it was derived, for profit, but failed to lawfully disclose to Plaintiff and class members the source of their personal information from which it was profiting.

134.   The forgoing violations were willful.  At the time CISIVE violated 15 U.S.C. § 1681g(a)(1)-(2), CISIVE knew it was required to clearly and accurately disclose to consumers "all information" in the consumer's file, as well as the sources of such information.  CISIVE's willful conduct is also reflected by, among other things, the following facts:

a.   CISIVE knew of potential FCRA liability;

b.   CISIVE is a company with access to legal advice through its own general counsel's office and outside employment counsel, and there will be no contemporaneous evidence that it determined that its conduct was lawful;

c.   The FCRA's at-the-time notice requirement is clearly spelled out in the plain language of the statute;

d.   CISIVE knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

e.   CISIVE voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

135.   Plaintiff and the Full File Disclosure Class are entitled to statutory damages of between $100 and $1,000 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

136.   Plaintiff and the Full File Disclosure Class is further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the putative classes, prays for relief as follows, in the form of an order:

   a.   determining that this action may proceed as a class action;

   b.   designating Plaintiff as class representative and designating Plaintiff's Counsel as counsel for the putative classes;

   c.   requiring notice to the putative classes at CISIVE and SPI's expense;

   d.   finding that CISIVE and SPI committed multiple, separate violations of the FCRA;

   e.   finding that CISIVE and SPI acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f.   awarding statutory damages as provided by the FCRA, including

punitive damages, to members of the putative classes; and

g.   awarding reasonable attorneys' fees and costs as provided by the

FCRA.

DATED: January 10, 2025                         Respectfully submitted,


*/s/Andrew R. Frisch*
Andrew R. Frisch
NY Bar No.: 3957115
**MORGAN & MORGAN, P.A.**
8151 Peters Rd, 4th Floor
Plantation, FL 33324
Telephone: (954) WORKERS
Fax: (954) 327-3013
Email: afrisch@forthepeople.com

**Marc R. Edelman, ESQ. (*PHV**
**forthcoming*)**
Fla. Bar No. 0096342
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813-577-4722
Fax: 813-257-0572
Email: MEdelman@forthepeople.com

*Attorney for Plaintiffs*