UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JONATHAN CLAYBROOK,
*individually and on behalf of the putative classes*

                         Plaintiff,

            v.

CARCO GROUP, INC.,
*doing business as CISIVE*

                      Defendant.
------------------------------------------------------------------X

                              **MEMORANDUM
AND ORDER**
25-CV-0162-SJB-LGD

**BULSARA, United States District Judge:**

Defendant CARCO Group, Inc. d/b/a Cisive ("Cisive") has filed a second

motion requesting a premotion conference to dismiss two of the three causes of action

in Plaintiff Jonathan Claybrook's Second Amended Complaint ("SAC") in this Fair

Credit Reporting Act ("FCRA") case.  (Def.'s Mot. for Premotion Conference dated July

18, 2025 ("Def.'s Second PMC Mot."), Dkt. No. 23; Second Am. Compl. dated June 26,

2025 ("SAC"), Dkt. No. 21; Pl.'s Resp. to Def.'s Second PMC Mot. dated Aug. 15, 2025

("Pl.'s Resp."), Dkt. No. 29)  As explained below, the request is deemed as making the

motion for dismissal itself, and the motion is granted in part and denied in part.

FACTUAL BACKGROUND

The following alleged facts are taken from the SAC.[1]  Claybrook secured a job

offer from non-party Wells Fargo on January 6, 2023, subject to a background check.

---

[1] For the purpose of this motion, the Court is "required to treat" Claybrook's "factual allegations as true, drawing all reasonable inferences in favor of [him] to the extent that the inferences are plausibly supported by allegations of fact."  *In re Hain Celestial Grp., Inc. Secs. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021).

(SAC ¶¶ 23–24).  But the offer was rescinded on January 12, 2023, because of information in a consumer report prepared by Cisive (the "Report") and provided to Wells Fargo.  (*Id.* ¶¶ 25–27).  The relevant excerpt of the Report is reproduced below.

```
------------------------------------------------------------------------
        Date Of Charge: 08/19/2011
                Charge:
                  Plea: PLEAD GUILTY
           Disposition: GUILTY
          Convicted Of: DISTRIBUTE/DELIVER/MANUFACTURE/PRODUCE OR ATTEMPT TO
                        OR POSSESS WITH INTENT TO
                        DISTRIBUTE/DELIVER/MANUFACTURE/PRODUCE
       Type Of Offense: FELONY
         Sentence Date: 10/10/2012
              Sentence: 120 DAYS CONFINEMENT, 5 YEARS PROBATION WITH

                              CONFIDENTIAL
```

| Subject: Claybrook, Jonathan Edward | Page: 9 |
|---|---|

```
                CONDITIONS, 200 HOURS COMMUNITY SERVICE.
                ON 05/23/2015 DISCHARGED FROM PROBATION.
------------------------------------------------------------------------
```

Claybrook alleges that he pled guilty to "*Attempt* to Produce a Controlled Substance," (*id.* ¶ 32), but Cisive reported the plea as one for a different offense: one for "Distribute/Deliver/Manufacture/Produce or Attempt to or Possess with Intent to Distribute/Deliver/Manufacture/Produce," (*id.* ¶ 30), which he alleges was just the original charge, (*id.* ¶ 36).  He contends the Report also omitted the ultimate disposition, which was a "Suspended Imposition of Sentence" ("SIS").  (*Id.* ¶ 34).  Cisive reported his sentence as "120 Days Confinement, 5 years probation with conditions, 200 hours community service." (SAC ¶ 27).  And it states the ultimate disposition as being "discharged from probation."  (*Id.*).

According to the SAC, an SIS disposition is "something other than a formal, final finding of guilt" under Missouri law and subject to vacatur by a recent state

constitutional amendment, so Wells Fargo would have viewed it more favorably than the "guilty" disposition that was actually reported.  (*Id.* ¶¶ 34–35, 38, 47).  Claybrook alleges that accurate information about his criminal history—the SIS disposition and charge to which he plead—was in the documents Cisive received from its information vendor, SPI, or otherwise available in court records.  (*Id.* ¶¶ 38, 40).  Cisive produced a "revised and corrected report" (the "Revised Report") after Claybrook initiated a dispute in light of the job offer rescission, removing the felony and only retaining the related misdemeanor for possession of drug paraphernalia—which Claybrook alleges was also an error.  (*Id.* ¶¶ 69–71).[2]  Cisive did not provide Claybrook with notice that it was reporting negative information about him to Wells Fargo, nor did Cisive ever respond to Claybrook's requests in July and December of 2023 for a full file disclosure of the Report.  (*Id.* ¶¶ 76–79).

Claybrook brings three causes of action, and Cisive only seeks dismissal of two. In Count I, Claybrook claims that Cisive "willfully violated 15 U.S.C. § 1681e(b) because it compiled and sold consumer report information about Plaintiff, which was used for employment purposes, without following reasonable procedures to assure maximum possible accuracy of the information."  (SAC ¶ 100).  In Count II, he claims that Cisive "willfully violated 15 U.S.C. § 1681k(a)(1) because it provided consumer reports about

---

[2] The original Report listed two convictions.  (Tr. dated June 12, 2025 ("PMC Tr."), Dkt. No. 24 at 19:3–10).  The first is for felony attempt to distribute or produce a controlled substance, or to possess with intent to do the same.  The second is for misdemeanor possession of drug paraphernalia, which Claybrook mentions in passing should also not have been reported, (SAC ¶ 71), but which he does not otherwise challenge, (PMC Tr. at 27:8–24 (Claybrook's counsel conceding that Cisive's reporting of the misdemeanor was "complete and up to date")).

Plaintiff . . . which were used for employment purposes and contained public-record

information likely to have an adverse effect on consumers' ability to obtain

employment, without providing the subjects of the report contemporaneous notice."

(*Id.* ¶ 108).  Cisive has not moved to dismiss Count III for failure to provide Claybrook

with a full file disclosure.  (*Id.* ¶¶ 116–124).

<u>PROCEDURAL HISTORY</u>

The Court previously held a premotion conference on Claybrook's First

Amended Complaint at Cisive's request, (Mot. for Premotion Conference dated Apr. 28,

2025, Dkt. No. 15), during which it did not decide the motion but granted Claybrook

permission to file a Second Amended Complaint to cure the identified deficiencies.

(Min. Entry & Order dated June 12, 2025; Tr. dated June 12, 2025 ("PMC Tr."), Dkt. No.

24 at 39:6–10).  Claybrook, individually and on behalf of putative classes, filed the SAC

on June 26, 2025,[3] which led to the current round of premotion conference letters.

---

[3] The SAC dropped SPI Researchers, LLP (the entity that allegedly sold Cisive
the underlying criminal history that Cisive then reported out to Wells Fargo), after the
parties stipulated to dismissal of Claybrook's claims against them.  (SAC at 1 n.1).
Otherwise, the SAC is substantially similar to the First Amended Complaint, the main
departure being the addition of the allegation that Wells Fargo would "have
considered the suspended imposition of sentence that should have been included with the felony
charge more favorably than the guilty notation CISIVE inaccurately included."  (*Id.*
¶ 28; *see also id.* ¶¶ 33–35, 40–41, 43).  The fact that the First Amended Complaint lacked
any such allegation was one of the principal pleading deficiencies identified at the June
premotion conference.  (PMC Tr. at 29:16–30:3, 36:9–25, 38:14–39:5).  The SAC also adds
an allegation that had Cisive provided Claybrook with the notice FCRA requires, he
would have been able to "proactively discuss the report with Wells Fargo in an effort to
save his job."  (SAC ¶ 77).

## LEGAL STANDARD

The Second Circuit has "occasionally approved the practice of construing pre–motion letters as the motions themselves under appropriate circumstances." *Kowalchuck v. Metro. Transp. Auth.*, 94 F.4th 210, 217 (2d Cir. 2024) (quotations omitted). This is such a circumstance. And, although less common than a District Court denying a dispositive motion, the Second Circuit has also "occasionally affirmed the granting of dispositive motions without full briefing . . . only when the issues were predominantly legal and the complaint had 'substantial deficiencies.'" *Id.* at 217 (quoting *Grossman v. GEICO Cas. Co.*, No. 21-2789, 2022 WL 1656593, at *4 (2d Cir. May 25, 2022)). Those conditions are met in this case, with respect to the claims and theories the Court dismisses. *See, e.g.*, *Kapitalforeningen Lægernes Inv. v. United Techs. Corp.*, 779 F. App'x 69 (2d Cir. 2019) (affirming district court's dismissal of an action by way of premotion letter construed as a motion to dismiss); *In re Best Payphones, Inc.*, 450 F. App'x 8, 15 (2d Cir. 2011) (affirming district court's denial of a motion to dismiss by way of premotion letter construed as said motion).

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Twombly*, 550 U.S. at 555 (internal citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

This pleading requirement "does not impose a probability standard at the motion-to-dismiss stage." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 147 F.4th 183, 192 (2d Cir. 2025) (noting that plausibility does not equate to probability). And "on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among plausible interpretations of the evidence will be a task for the factfinder." *Id.* (quotations omitted).

DISCUSSION

## I.     Count I: FCRA § 1681e(b)

The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "[T]o prevail on a section 1681e claim against a consumer reporting agency, it is necessary for a plaintiff to establish, among other things, that a

credit report contains an inaccuracy." *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023). "[A] credit report is inaccurate either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Id.* (quotation omitted). "[A]llegedly inaccurate information reported on a consumer's credit report must be objectively and readily verifiable to be actionable under section 1681e(b)." *Sessa v. Trans Union, LLC*, 74 F.4th 38, 43 (2d Cir. 2023). Claybrook alleges and Cisive challenges four inaccuracies in the Report, (SAC ¶¶ 30, 34, 38, 42–48), and the Court addresses each in turn.

Claybrook's first claimed inaccuracy is that his suspended sentence is not a conviction at all and, therefore, should not have been reported. (*Id.* ¶ 38; Pl.'s Resp. at 1–2). To reach this conclusion, he contends that the Court should examine Missouri's treatment of his offense. (Pl.'s Resp. at 1). For the purposes of the FCRA, a conviction is determined by federal, not state, law. *Rhodes v. First Advantage Background Servs. Corp.*, No. 24-11005, 2024 WL 4615775, at *6 n.4 (11th Cir. Oct. 30, 2024) ("[T]here can be no question as to the application of federal law in defining a 'conviction' within the meaning of a federal statute.") (collecting cases); *Aldaco v. RentGrow, Inc.*, 921 F.3d 685, 688 (7th Cir. 2019) ("As far as we can tell, the word 'conviction' in federal statutes has been defined according to state law only with explicit direction from Congress. . . . Aldaco does not provide persuasive reasons why the Fair Credit Reporting Act's use of 'conviction' should be interpreted differently."); (*see also* PMC Tr. at 20:4–21:4 (Cisive's

counsel citing *Rhodes*, 2024 WL 4615775)).[4]  And Claybrook cites no authority that his Missouri offense would not be a conviction under federal law.  (*See also* PMC Tr. at 22:5–8 (Claybrook's counsel confirming that Claybrook is not challenging that the state court record reflected a disposition of "guilty")).

The second allegation is that the Report "communicat[es] that Plaintiff was found guilty of the completed crime," rather than just attempted possession of a controlled substance.  (Pl.'s Resp. at 2; *see also* SAC ¶¶ 30–32; PMC Tr. at 9:20–25 (Claybrook's counsel confirming that their argument is that the Report is inaccurate because it implies the completed offense)).  But the Report, on its face, is accurate.  It states that Claybrook pled guilty either to "distribute/silver/ manufacture/produce," *or* "attempt to," *or* "possess[ion] with intent to distribute/deliver/manufacture/ produce."  (SAC ¶ 27).  And it is true—as set forth in the SAC—that Claybrook pled guilty to one of those crimes.  (*Id.* ¶ 32).

Claybrook separately alleges that this string of possible charges is misleading because it provides multiple options of charges to which he ultimately pled—since the different charges carry varying degrees of severity.  (Pl.'s Resp. at 2; PMC Tr. at 7:25–8:13 (Claybrook's counsel arguing that the Report gives several potential crimes to choose from, and an attempt charge is less severe than the alternatives)).  But to state a FCRA claim, a plaintiff must plead that the content is "misleading in such a way and to such an extent that it can be expected to have an adverse effect."  *Mader*, 56 F.4th at 269.

---

[4] Claybrook also cites *Rhodes* in his brief.  (*See* Pl.'s Resp. at 1 (citing *Rhodes*, 2024 WL 4615775, at *5–6)).

And both the SAC and Claybrook's briefing are devoid of any facts to suggest that Wells Fargo would have responded differently—that is, not rescinded the job offer—if the Report only included the attempt charge, as opposed to labeling the charge as either one for attempt or the completed crime.  And the out-of-circuit authority Claybrook cites for this argument is factually inapposite.[5]  Thus, Claybrook has not pled that the Report was misleading in a manner expected to produce an adverse effect.

The third alleged inaccuracy is best understood as an omission: the failure to "include the appropriate disposition of his case—'suspended imposition of sentence.'" (Pl.'s Resp. at 3).  As the excerpted portion shows, the Report includes a disposition of "guilty," indicates that Claybrook was sentenced to "120 days confinement" and "5 years probation," and then notes that he was eventually "discharged from probation." (SAC ¶ 27).  Claybrook asserts that Wells Fargo would have viewed the SIS notation more favorably than a guilty disposition and, thus, it was misleading to omit it.  (*Id.* ¶¶ 28, 43, 45–46; PMC Tr. at 22:5–23:14 (Claybrook's counsel conceding accuracy of the "guilty" disposition but discussing whether the SIS omission was misleading)).  Cisive argues that the omission of the SIS designation was not inaccurate or misleading, since the Report reflected that Claybrook received and successfully completed probation. (Def.'s Second PMC Mot. at 3; *see also* PMC. Tr. at 15:19–16:4 (Cisive's counsel arguing that "there's enough . . . to provide the essence of the information about a suspended imposition of sentence")).  But demonstrating that the information presented is accurate

---

[5] *See Dougherty v. Quicksius, LLC*, No. 15-CV-6432, 2016 WL 3757056, at *4–*5 (E.D. Pa. July 14, 2016) (denying motion to dismiss FCRA claim for duplicative reporting where the report listed 15 convictions, but plaintiff only had 5).

is not sufficient in this context.  Omissions can constitute an inaccuracy for FCRA purposes, especially where a criminal record is at stake.  *See Obabueki v. Int'l Bus. Machines Corp.*, 145 F. Supp. 2d 371, 397 (S.D.N.Y. 2001) ("[T]he information provided to IBM was clearly deficient because the dismissal was not mentioned."), *aff'd*, 319 F.3d 87 (2d Cir. 2003).  Here, because the Report omits the SIS designation, a reader may reasonably infer that Claybrook received a more severe sentence than he actually did.  And Claybrook plausibly alleges that a reasonable reader, such as his intended employer, may have responded differently to the SIS designation, (SAC ¶¶ 28, 35), had a potential hire served a sentence including incarceration, compared to having received a suspended sentence conditioned on the successful completion of probation.

The final alleged inaccuracy stems from Missouri's constitutional amendment legalizing marijuana, which gave its courts twelve months to expunge existing records. (Def.'s Second PMC Mot. at 3; Pl.'s Resp. at 4).  The amendment became effective on December 8, 2022, (SAC ¶ 47), and set out several processes to address previous criminal convictions for now-legal conduct, Mo. Const. art. XIV, §§ 2.10(7)–(8).  As relevant here, within twelve months of the effective date, state courts are required to "order the expungement of criminal history records for all persons no longer incarcerated or under the supervision of the department of corrections but who have completed their sentence for any felony marijuana offenses." *Id.* § 2.10(8)(a).  The expungement orders vacate convictions and sentences as "legally invalid" and are "legally effective immediately." *Id.* § 2.10(8)(b).  "The effect of such expungement shall be to restore such person to the status the person occupied prior to such arrest, plea, or

conviction and as if such event had never taken place." *Id.* § 2.10(8)(c). "Such person shall not be required to acknowledge the existence of such a criminal history record . . . in any application for employment . . . and may deny the existence of the record regardless of whether the person has received notice from the court that an expungement order has been issued on the person's behalf." *Id.*

If the Report included a conviction that had been expunged, that could constitute an inaccuracy. *See, e.g.*, *Obabueki*, 145 F. Supp. 2d at 399. But the SAC contains no information about whether or when Claybrook's marijuana conviction was in fact ordered expunged pursuant to the constitutional amendment, nor did counsel point to any pertinent information to that effect at the June premotion conference. (*See* PMC Tr. at 27:15–20). Further, the amendment only went into effect in early December 2022 and gave state courts one year to order expungement. The Report was produced less than two months later, in mid-January 2023. (Pl.'s Resp. at 4). While true, as Claybrook argues, that "there is nothing that would prevent a court from [ordering expungement] sooner," (*id.*), he has not alleged that the state court actually did so in his case.

Even if the Court infers, as Claybrook suggests, that after he disputed the Report, the Revised Report "removed the felony in response to the amendment," (*id.*), that does not imply the initial Report was inaccurate, but rather, that Claybrook's record was eventually vacated, and Cisive updated the Revised Report to reflect the same. (*See* PMC Tr. at 20:5–21:4, 32:4–13, 33:11–34:2). Without any allegations from which to infer that the initial Report was inaccurate because of the constitutional amendment, this theory fails. *Cf. Shimon v. Equifax Info. Servs. LLC*, 994 F.3d 88, 91–92 (2d Cir. 2021)

("[T]he New York court reported that the case against him was 'settled.' . . . He accordingly maintains that Equifax was obligated to report the judgment as 'vacated.' But the state court docket did not reflect a vacatur, so this argument misses the mark.").

In summary, Cisive's motion to dismiss Count I alleging a violation of 1681e(b) is granted in part and denied in part.  The Court finds that Claybrook has stated a claim that Cisive's omission of the SIS disposition was misleading in violation of FCRA, and Claybrook is permitted to proceed on that theory.  The Court finds Claybrook's other assertions of inaccuracies insufficient to state a claim and, thus, to the extent he seeks to bring arguments for violations of § 1681e(b) based on those alleged inaccuracies, they are dismissed.

## II.    Count II: FCRA § 1681k(a)

Cisive also moves to dismiss Count II, which alleges that Cisive failed to provide contemporaneous notice that it was furnishing reports likely to adversely impact Claybrook's ability to obtain employment as required by § 1681k(a).  (SAC ¶ 108).

> Section 1681k(a) requires that an agency, when furnishing 'matters of public record' which are 'likely to have an adverse effect upon a consumer's ability to obtain employment,' must either (1) provide notice to the subject of the report when the report is transmitted, or (2) maintain *strict* procedures to ensure that such information 'is complete and up to date.'

*Runyon v. ClearStar, Inc.*, No. 24-CV-1519, 2025 WL 1530582, at *6 (E.D.N.Y. May 29, 2025) (quoting 15 U.S.C. § 1681k(a)).  Since Cisive does not dispute that it did not furnish Claybrook with a contemporaneous report, its only valid defense to the claim can be that it maintained "strict procedures" to ensure the report was "complete and up to date."  *See* 15 U.S.C. § 1681k(a).

"The logical starting point for an analysis of Section 1681k is whether the information provided was complete and up to date.  If this is so, then an inquiry into the agency's procedures is unnecessary."  *Watson v. Caruso*, 424 F. Supp. 3d 231, 250 (D. Conn. 2019) (quoting *Obabueki*, 145 F. Supp. 2d at 396).  In *Obabueki*, the court concluded that omitting the fact that a criminal conviction had been dismissed rendered the report not "complete nor up to date."  145 F. Supp. 2d at 396–97 ("[T]he information provided to IBM was clearly deficient because the dismissal was not mentioned.  Similarly, while this information reflected one entry in the 'current public record' with regard to plaintiff's criminal record in Santa Clara County, it was not up to date because it did not provide the most current information with regard to that entry, i.e., the . . . dismissal.").  So too here, Claybrook stated a claim as to the omission of the SIS disposition; therefore, the Court concludes that he has stated a claim that the Report was not complete and up to date in violation of § 1681k(a).

Accordingly, the motion to dismiss Count II is denied.

<u>CONCLUSION</u>

In summary, the motion to dismiss is granted in part and denied in part.  The motion is denied with respect to Count I, alleging a violation of § 1681e(b), to the extent the claim is based on an omission theory about the final disposition of Claybrook's criminal conviction, but it is otherwise granted.  The motion is denied with respect to Count II, alleging a violation of § 1681k(a).

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  January 9, 2026
      Central Islip, New York